UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LEONARD HOLLINGSWORTH,              Civil No. 11-955 (DSD/FLN)

      Plaintiff,

v.                                 **AMENDED REPORT AND**

                              **RECOMMENDATION**

MICHAEL J. ASTRUE,

Commissioner of Social Security,

      Defendant.

_____

James S. Simonson and Ashley B. Ewald for Plaintiff.
David W. Fuller, Assistant United States Attorney, for Defendant.
_____

Plaintiff Leonard Hollingsworth seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied his application for disability insurance benefits and supplemental security income. The matter has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1. The parties have submitted cross-motions for summary judgment. (ECF Nos. 17 and 27.) For the reasons set forth below, the Court recommends that Plaintiff's motion be **GRANTED in part** and **DENIED in part** and Defendant's motion be **DENIED**.

## I.   INTRODUCTION

Mr. Hollingsworth applied for disability insurance benefits and supplemental security income on January 24, 2007, alleging an onset date of January 1, 2006. (Admin. R. 114, 116.) His

application was denied initially and on reconsideration.  (R. 65, 73, 76.)  He then filed a request for

a hearing, which was held on August 18, 2009.  (R. 84, 95.)  The Administrative Law Judge ("ALJ")

denied Mr. Hollingsworth's application for benefits.  (R. 14.)  Mr. Hollingsworth appealed the ALJ's

decision, and the Appeals Council denied his request for review.  (R. 1.)

On April 18, 2011, Mr. Hollingsworth commenced this action seeking a reversal of the ALJ's

decision, or alternatively, a remand for further proceedings.  (ECF No. 1.)  Mr. Hollingsworth and

the Commissioner now both move for summary judgment.  (ECF Nos. 17, 27.)

## II.    STATEMENT OF FACTS

Mr. Hollingsworth is a 55-year-old man who previously worked as a laborer, maintenance

worker, warehouse worker, auto mechanic, and tow truck driver.  (R. 33.)  He claims to be disabled

due to his multilevel degenerative disc disease, mental illness, and coronary artery disease.  (R.

34–35, 145.)

### A.    Multilevel Degenerative Disc Disease

In October 2006, Mr. Hollingsworth accidentally fell into an embankment.  (R. 216.)  He

began seeing Dr. Steven Sobel for back pain shortly thereafter.  (*Id.*)  Dr. Sobel concluded, after

reviewing an MRI scan of Mr. Hollingsworth's lumbar spine, that he had "[m]ultilevel degenerative

disc disease without significant central stenosis" and "[m]ild-moderate right foraminal stenosis at

L5-S1."  (R. 221.)  Mr. Hollingsworth also began seeing a chiropractor for the next ten months.  (R.

201, 284.)

In April 2007, consultative physician Dr. Dan Larson concluded, based on his review of Mr.

Hollingsworth's medical records, that Mr. Hollingsworth could lift or carry 50 pounds occasionally,

lift or carry 25 pounds frequently, stand or walk for 6 hours in an 8-hour workday, sit for 6 hours

in an 8-hour workday, and push or pull without restriction.  (R. 235.)  Dr. Larson also noted that Mr. Hollingsworth had been treated with "conservative therapies" for his lower back injury.  (*Id.*)  Dr. Larson's assessment was reviewed and confirmed by another consultative physician, Dr. Charles Grant, in September 2007.  (R. 302–04.)

In May 2007, Mr. Hollingsworth once again visited Dr. Sobel and was prescribed Percocet. (R. 275.)  He was also prescribed an epidural steroid, "which really didn't help very much."  (R. 274.)

In July 2007, Mr. Hollingsworth saw Dr. Stefano Sinicropi.  (R. 284.)  Dr. Sinicropi observed that Mr. Hollingsworth's range of motion was "50% in all directions limited by pain and spasm."  (R. 288.)  Dr. Sinicropi diagnosed Mr. Hollingsworth with "[s]ymptomatic low back pain likely secondary to L5-S1 annular tear, but component may be attributed to generalized degenerative disc disease L2-S1."  (*Id.*)  He described Mr. Hollingsworth as having "fairly significant low back pain."  (*Id.*)  Later that month, Mr. Hollingsworth returned to Dr. Sinicropi's clinic for two pain management follow-up appointments.  (R. 292–95.)

In November 2007, Mr. Hollingsworth saw Dr. Sinicropi again, complaining of severe pain. (R. 320.)  After considering treatment options, Mr. Hollingsworth underwent lumbar fusion surgery in January 2008.  (R. 308–16, 320–21.)  Dr. Sinicropi noted that Mr. Hollingsworth was "in [a] satisfactory condition and did quite well in the postoperative period."  (R. 311.)  But he did have "significant back pain which improved on a daily basis."  (*Id.*)  During a follow-up exam, a physician's assistant noted that Mr. Hollingsworth continued to have abdominal and low back pain. (R. 319.)

In April 2008, Dr. Sinicropi noted that Mr. Hollingsworth was doing "relatively well in the

postoperative period." (R. 317.)  However, an upper respiratory infection slowed him down, so Dr. Sinicropi started Mr. Hollingsworth on a physical therapy program for twelve weeks to "aggressively rehabilitate him. . . ." (*Id.*)  Mr. Hollingsworth completed six sessions of physical therapy before suffering a heart attack in May 2008, which forced him to discontinue physical therapy.  (R. 428.)

In June 2008, Mr. Hollingsworth visited Dr. Daniel Reeves, complaining of "chronic low back pain." (R. 441-42.)  He stated that his back pain was improving until the heart attack he suffered a month earlier.  (*Id.*)  Mr. Hollingsworth suspected the defibrillators had exacerbated his back pain.  (*Id.*)

In July 2008, Mr. Hollingsworth had another follow-up appointment at Dr. Sinicropi's clinic regarding his back pain.  (R. 427.)  A physician's assistant obtained two-view lumbar x-rays, which revealed "excellent placement of hardware and grafts." (*Id.*)  The physician's assistant concluded that Mr. Hollingsworth might have been "dealing with a transfer syndrome to the SI joint on the right." (*Id.*)  He prescribed more injections and pain medications and explained that the next step would be to obtain updated imaging studies if Mr. Hollingsworth's condition did not improve.  (*Id.*)

Nine months later, Mr. Hollingsworth returned to Dr. Sinicropi's clinic, complaining of "very bad" back pain.  (R. 422.)  A physician's assistant recommended a CT scan to better evaluate Mr. Hollingsworth's fusion.  (*Id.*)  A review of the CT scan "reveal[ed] a solid interbody fusion and posterolateral fusion L4 through S1" and a central disc herniation at L2-3 with a "possible impressment on the traversing L3 nerve roots." (*Id.*)

On August 18, 2009, the day of the ALJ hearing, Dr. Sinicropi opined that Mr. Hollingsworth could not carry any weight frequently, but he was able to stand or walk for 6 hours

in an 8-hour work day, sit for 4 to 6 hours in an 8-hour work day, and carry 20 pounds occasionally.[1] (R. 492–93.)  Dr. Sinicropi further opined that Mr. Hollingsworth could not balance, although he could occasionally climb stairs, stoop, crouch, kneel, and crawl.  (R. 493.)  Lastly, Dr. Sinicropi noted that Mr. Hollingsowrth could not stand or sit for more than 30 minutes without interruption or walk for more than 45 minutes without interruption.  (R. 492.)

### B.   Mental Illness

Mr. Hollingsworth began suffering from depression in 1987 and was hospitalized (also for depression) in 1995.  (R. 231.)  He has never thought about or attempted suicide.  (R. 361.)  At some point prior to 2006, he was diagnosed with bipolar disorder and prescribed Paxil, Lithium, and Zyprexa.  (R. 220.)  He later stopped taking the medication due to the adverse side effects he experienced, namely diarrhea and weight gain of fifty pounds.  (R. 218, 220.)  In October 2006, Mr. Hollingsworth saw Dr. Eelkema for his depression.  (R. 217–18.)  Dr. Eelkema noted that Mr. Hollingsworth's depression was likely related to his bipolar disorder.  (R. 217.)  Dr. Eelkema recommended that Mr. Hollingsworth resume taking Paxil and Lithium.  (*Id.*)

In April 2007, consultative physician Dr. Alford Karayusuf examined Mr. Hollingsworth and diagnosed him with bipolar disorder and mild depression.  (R. 231–33.)  Dr. Nelson, another consultative physician, submitted that the bipolar disorder moderately affected Mr. Hollingsworth's abilities to perform activities of daily living and maintain social functioning, concentration, persistence, or pace.  (R. 252.)  Dr. Nelson noted that Mr. Hollingsworth might have been "underreporting [sic] his [daily] activities."  (R. 254.)  Dr. Nelson submitted that Mr. Hollingsworth

---

[1]   Mr. Hollingsworth submitted Dr. Sinicropi's report to the ALJ after the hearing.  (R. 491-95.)

was not significantly limited or only moderately limited in his abilities of: understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (R. 256–57.) Dr. Nelson concluded that Mr. Hollingsworth retained sufficient mental capacity to carry out routine tasks and had the ability to handle brief and superficial contact with co-workers and public contacts, handle ordinary levels of supervision found in a customary work setting, and handle the stresses of a routine repetitive or a 3-4 step work setting. (R. 258.)

In September 2008, Dr. Reeves examined Mr. Hollingsworth for depression and bipolar disorder. (R. 436.) Mr. Hollingsworth was not taking any anti-psychotic or other psychiatric medications at the time. (*Id.*) Dr. Reeves concluded that Mr. Hollingsworth "[d]efinitely need[ed] to get in to see a psychologist and psychiatrist as soon as possible both to get help with his condition and to get an opinion on any disability which he likely [did] have and may qualify for." (R. 435.)

## C.     Coronary Artery Disease

In May 2008, Mr. Hollingsworth went to the emergency room suffering from an acute inferior myocardial infarction and cardiac arrest. (R. 460.) Doctors resuscitated him then performed a catheter thrombectomy and stenting. (R. 455.)

On August 6, 2009, Dr. Jennifer Dankle completed an annual examination. (R. 336–39, 487–90.) Mr. Hollingsworth stated that he has had "significant financial difficulties and has not been compliant with his medications for this reason." (R. 487.) He tried to space his pills out by taking them every other day. (*Id.*) Dr. Dankle estimated that Mr. Hollingsworth could sit for one hour without interruption and stand for forty-five minutes without interruption. (R. 337.)

## D.     Mr. Hollingsworth's Testimony

Mr. Hollingsworth testified that he quit his job as a mobile home installer in November 2007

due to his back pain.  (R. 36–38.)  He had previously worked as a maintenance supervisor until December 2006.  (R. 38.)

Mr. Hollingsworth testified that he experienced "[s]hooting, throbbing" back pain and numbness in his right upper thigh.  (R. 37.)  He felt the pain when doing "mobile" activities, such as "playing with his kids" or "going to the store," but the pain was tolerable while sitting or lying down. (R. 37–38.) Mr. Hollingsworth testified that he needed to alternate between sitting and lying down at least once every hour due to shoulder pain resulting from the "compression of [his] spine." (R. 39.)

Mr. Hollingsworth testified that the back surgery did not ease his pain.  (R. 41.)  His range of motion was limited, and he could not lift weights or pick up his kids.  (*Id.*)  He had trouble sitting and standing, and he could only walk half a block.  (R. 42.)  For exercise, he tried chasing his children around, but that was hard to do.  (*Id.*)  Mr. Hollingsworth tried to do family activities, but his pain limited his participation.  (R. 43.)  He once went to his kid's baseball practice but ended up almost going to the emergency room after vomiting and feeling lightheaded.  (*Id.*)  He could not kneel down and also had trouble climbing stairs because it was difficult to lift his right leg.  (R. 43–44.)  He also had difficulty getting into a car.  (R. 44.)  Mr. Hollingsworth testified that he took care of his children by teaching them to help out around the house.  (R. 45.)  He also helped load and unload the dishwasher and went shopping "once in a great while."  (*Id.*)

Regarding his bipolar disorder, Mr. Hollingsworth testified that he had been "dealing with it as best as [he] could."  (R. 46.)  He had concentration and memory problems, such as forgetting certain steps to fix a vehicle.  (R. 46–47.)

## E.    Vocational Expert's Testimony

The ALJ posed three hypothetical questions to the vocational expert. The first hypothetical assumed a person that has the following residual functional capacity ("RFC"): lift 20 pounds occasionally and 10 pounds frequently; stand and sit for 6 hours in an 8-hour workday; occasional stair climbing, balancing, stooping, kneeling, crouching, and crawling; cannot climb ladders; limited to simple routine tasks with occasional changes in a routine work setting and occasional interaction with the public, coworkers, and supervisors. (R. 49.) The vocational expert testified that a person with this hypothetical RFC could not perform Mr. Hollingsworth's past relevant work but could perform other jobs such as a production worker, bagger, and parking lot cashier. (R. 50–51.)

The second hypothetical assumed a person that has the ability to: lift 10 pounds occasionally and 5 pounds frequently, stand for 2 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. (R. 51.) The second hypothetical was identical to the first hypothetical in all other respects. (*Id.*) The vocational expert testified that a person with this RFC could perform the same jobs as the person in the first hypothetical. (R. 51–52.)

The third hypothetical was identical to the second one albeit with one modification: the person would be unable to "sustain an eight-hour work day." (R. 53.) The vocational expert testified that there were no full-time, competitive jobs for a person with that RFC. (*Id.*)

### F.      The ALJ's Decision

To determine whether Mr. Hollingsworth was disabled, the ALJ followed the five-step sequential process established by the Social Security Administration, outlined in 20 C.F.R. § 404.1520. The ALJ first determined that Mr. Hollingsworth had not engaged in any substantial gainful activity since the alleged onset date of his disability. (R. 19.) At the second step, the ALJ concluded that Mr. Hollingsworth had the severe impairments of bipolar disorder, degenerative disc

disease, and status post myocardial infarction-inferior status post stent. (*Id.*) At the third step, the ALJ found that Mr. Hollingsworth's physical and mental impairments did not match or equal a listed disability. (R. 19–20.)

At the fourth step, the ALJ determined that Mr. Hollingsworth had the following RFC: lift 20 pounds occasionally and 10 pounds frequently; stand and sit for 6 hours during an 8-hour workday; climb stairs, balance, stoop, kneel, crouch, and crawl occasionally; unable to climb ladders; perform simple, routine, and unskilled tasks; unable to tolerate workplace changes more than occasionally; and unable to interact with the public, coworkers, and supervisors more than occasionally. (R. 20.)

At step five, the ALJ concluded that Mr. Hollingsworth was unable to perform his past relevant work but that he could perform jobs such as bench worker, bagger, and parking lot cashier. (R. 25–26.) Because these jobs existed in significant numbers in the national economy, the ALJ found that Mr. Hollingsworth was not disabled. (R. 26.)

## III.   STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998). Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 220 (1938). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). "As long as substantial evidence in the record supports the Commissioner's decision, we

may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.*

## IV.   CONCLUSIONS OF LAW

### A.   The ALJ's RFC determination is not supported by substantial evidence.

Mr. Hollingsworth contends that the ALJ's RFC determination is not supported by substantial evidence because (1) the ALJ failed to give proper weight to his treating physician's opinion and (2) the ALJ improperly discredited his subjective complaints of pain. The Court agrees.

### 1.   The ALJ failed to give proper weight to the opinion of Mr. Hollingsworth's treating physician.

An ALJ must determine "a claimant's RFC based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). An ALJ must "evaluate every medical opinion." 20 C.F.R. § 404.1527(c). A treating physician's opinion regarding a claimant's impairment is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel*, 201 F.3d 1010, 1012–13 (8th Cir. 2000) (quoting 20 C.R.F. § 404.1527(d)(2)). "Whether the ALJ grants a treating physician's opinion substantial or little weight, an ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Id.* at 1013 (quoting 20 C.F.R. § 404.1527(d)(2)).

The ALJ's RFC determination is inconsistent with some of the limitations observed by Mr.

Hollingsworth's treating physician, Dr. Sinicropi.  (*Compare* R. 20–24 *with* R. 492–95.)  In his August 2009 report, Dr. Sinicropi concluded that Mr. Hollingsworth could not carry any weight frequently, balance, or stand or sit for more than thirty to forty-five minutes without interruption. (R. 492–93.)  The ALJ concluded that Mr. Hollingsworth could carry 10 pounds frequently and balance, and he did not discuss whether Mr. Hollingsworth needed to alternate between sitting and standing.   (R. 20–24.)   Given the apparent disagreement between the ALJ and Dr. Sinicropi regarding some of Mr. Hollingsworth's limitations, the ALJ was required to give specific reasons for his refusal to grant Dr. Sinicropi's opinion controlling weight.  *See Prosch*, 201 F.3d at 1013; 20 C.F.R. § 404.1527(c)(2). The ALJ also did not discuss whether Dr. Sinicropi's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or whether it was "inconsistent with other substantial evidence in the record."  *Prosch*, 201 F.3d at 1012-13. The ALJ's failure to address these issues is reversible error.  *See id.*

The Commissioner argues that the ALJ's RFC is supported by the opinions of the consultative physicians, Dr. Larson and Dr. Grant.[2]  The Court notes, however, that "the opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence," particularly "in the face of the conflicting assessment of a treating physician." *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999).  The Commissioner does not cite to any other evidence in the record to support the ALJ's RFC determination.  Because the opinions of Dr. Grant

---

[2]     The Commissioner cites to *Russell v. Astrue*, 626 F.Supp.2d 921 (D.Minn. 2009) for the proposition that an ALJ may discredit treating physicians' opinions and instead afford substantial weight to the opinion of consultative physicians.  The Court notes, however, that the ALJ in *Russell* discredited the treating physicians' opinion only after providing specific, detailed reasons for doing so.  *See Russell*, 626 F.Supp.2d at 937-38.  Here, the ALJ discredited portions of Dr. Sinicropi's opinion without providing any reasons whatsoever.

and Dr. Larson conflicted with Dr. Sinicropi's opinion, and were based solely on their review of Mr. Hollingsworth's medical record, their assessments do not–without more–constitute substantial evidence. *See id.*

The Commissioner also argues that the ALJ's disregard for Dr. Sinicropi's opinion is harmless error. The Court disagrees. Social Security Ruling 96-9p makes clear the need for specificity with respect to these limitations:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.
>
> ...
>
> [I]f an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base. It is important to state in the RFC assessment what is meant by limited balancing in order to determine the remaining occupational base.

The ALJ's lack of specificity with respect to these issues was not harmless error.

The Court concludes that the ALJ did not provide adequate reasons for departing from the opinion of Mr. Hollingsworth's treating physician with respect to his ability to lift weight frequently, balance, and to sit, stand and walk without interruption.

**2.      The ALJ improperly discredited Mr. Hollingsworth's subjective complaints of pain.**

Mr. Hollingsworth contends that the ALJ improperly discredited his subjective complaints of pain. An ALJ may discount a claimant's subjective complaints of pain "if there are inconsistencies in the record as a whole." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In assessing a claimant's credibility, an ALJ must consider: (1) the claimant's daily activities; (2) the

duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the amount, effectiveness, and side effects of treatment and medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Id.* "When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the *Polaski* factors." *Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998).

The ALJ concluded that Mr. Hollingsworth's testimony concerning the intensity, persistence, and limiting effects of his allegedly disabling symptoms was not credible for the following reasons: (a) Mr Hollingsworth's daily activities were inconsistent with his complaints of disabling pain; (b) the complaints were "not substantiated by the objective medical evidence of record"; (c) he did not receive the "type of medical treatment one would expect for a totally disabled individual"; (d) he has not been "entirely compliant in taking prescribed medications"; (e) the prescribed "treatment has  generally been successful in controlling [his allegedly disabling] symptoms" when Mr. Hollingsworth has complied with that treatment; and (f) his responses to the consultative psychiatrist's questions "were per the examining psychiatrist evasive or vague at times during the examination, and left the impression that the claimant may have been less than entirely candid.." (R. 24-25.) The Court concludes that not one of these reasons is supported by substantial evidence.

### a.    Daily activities

The ALJ found that Mr. Hollingsworth "described daily activities which are not limited to the extent one would expect for a totally disabled individual." (*Id.*) The ALJ mischaracterizes Mr. Hollingsworth's testimony.   He testified that his daily activities consisted of "keep[ing] [his

children] from killing each other, trying to teach them . . . to help around the house", unloading the dishwasher, and "shopping once in awhile." (R. 45.) The Eighth Circuit "has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." *Kelley v. Callahan*, 133 F.3d 583, 588–89 (8th Cir. 1998). Substantial evidence does not support the ALJ's conclusion that Mr. Hollingsworth's daily activities were inconsistent with his subjective complaints of pain.

### b.      Objective medical evidence of record

The ALJ found that Mr. Hollingsworth's complaints of "numbness, aching and throbbing shoulder pain from compressions of the spine after sitting less than 1 hour" were "not substantiated by the objective medical evidence of record." (R. 24–25.) But the record does substantiate Mr. Hollingsworth's complaints. Dr. Sinicropi opined that Mr. Hollingsworth was unable to sit or stand for more than thirty to forty-five minutes without interruption. (R. 493.) Dr. Dankle opined that Mr. Hollingsworth was unable to sit for more than one hour without interruption. (R. 337.) Substantial evidence does not support the ALJ's conclusion that Mr. Hollingsworth's complaints of back pain were not substantiated by objective medical evidence.

### c.      The "type of medical treatment one would expect for a totally disabled" person

The ALJ found that Mr. Hollingsworth "has not generally received the type of medical treatment one would expect for a totally disabled individual." (R. 24.) The Commissioner contends that this is true because consultative physician "Dr. Larson observed  . . . that Hollingsworth's physical impairments had been 'treated with conservative therapies.'" (Def.'s Br. at 7–8 (quoting

R. 235).)   However, Dr. Larson's opinion is outdated: it was rendered before the lumbar fusion surgery in 2007 and the physical therapy sessions in 2008.   The Court further notes that Mr. Hollingsworth's efforts to treat his physical impairments were complicated by the heart attack he suffered in May 2008.

Although a claimant's subjective complaints of pain may also be discredited "by evidence that the claimant has received minimal medical treatment," see *Kelley*, 133 F.3d at 589, Mr. Hollingsworth has not received minimal or conservative treatment.   To the contrary, Mr. Hollingsworth has seen numerous physicians, including spine specialists; taken numerous pain medications; received epidural steroid injections; undergone an MRI, lumbar fusion surgery, and physical therapy; and seen a chiropractor.   This is not a minimal level of treatment.   See *Kelley*, 133 F.3d at 589 (holding that a claimant had not received minimal treatment when she made numerous doctor visits; taken many prescription medications; availed herself of many pain treatment modalities, including physical therapy, trigger point injections of cortisone, chiropractic treatments, and nerve blocks; and has had several surgeries and many diagnostic tests, including X-rays, CT scans, DNA tests, MRIs, and blood work ).   Substantial evidence does not support the ALJ's decision to discredit Mr. Hollingsworth's subjective complains of pain based on the medical treatment he received.

### d.    Compliance with medications

The ALJ found that "there is evidence that [Mr. Hollingsworth] has not been entirely compliant in taking the prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application."  (R. 24)  The ALJ does not specify what testimony he finds incredible.  Mr. Hollingsworth offered testimony on both

his physical and mental impairments.  Although Mr. Hollingsworth previously stopped taking medications for his bipolar disorder, there is no indication in the record that Mr. Hollingsworth failed to comply with any medications he was prescribed for his degenerative disc disease.[3]  Mr. Hollingsworth's refusal to take medication for his bipolar disorder says nothing about the credibility of his testimony concerning his back pain.   To the extent that the ALJ discounted Mr. Hollingsworth's complaints of back pain on account of his refusal to take medication for his bipolar disorder, the ALJ's decision is not supported by substantial evidence.

### e.    Treatment successful in controlling Mr. Hollingsworth's allegedly disabling symptoms

The ALJ next discredited Mr. Hollingsworth's complaint of back pain by reasoning that "treatment has been generally successful in controlling [Mr. Hollingsworth's] symptoms."  (R. 24.) The Commissioner cites to several pages of the record as evidence that Mr. Hollingsworth "'did quite well' following his back surgery and denied experiencing back pain on subsequent hospital visits" after his back surgery.  (Def.'s Br. at 11 (citing R. 317-19, 342).)  However, most of the pages cited by the Commissioner support the conclusion that Mr. Hollingsworth continued experiencing back pain following surgery, albeit with some improvement.   Indeed, on January 29, 2008, a physician's assistant noted that Mr. Hollingsworth "continues to have abdominal and low back pain, but it is improving."  (R. 319.)  On February 6, 2008, Dr. Sinicropi noted that Mr. Hollingsworth had "nights where he has significant back pain versus other nights when his back pain is improved."

---

[3]    The record does indicate that Mr. Hollingsworth "space[d] out" the pills he was taking for his coronary artery disease due to his "significant financial difficulties."  (R. 487.) Mr. Hollingsworth's inability to pay for these medications, however, says nothing about the credibility of his testimony regarding his back pain.

(R. 318.)  And, on February 28, 2008, Dr. Sinicropi noted that Mr. Hollingsworth had "significant back pain which improved on a daily basis."  (R. 311.)  After Mr. Hollingsworth's heart attack in May 2008, he continued complaining of back pain to the point where his physicians prescribed medication, epidural steroid injection, and a CT scan.  (R. 422, 427, 442.)  Substantial evidence does not support the ALJ's conclusion that treatment has been generally successful in treating Mr. Hollingsworth's symptoms.

### f.       Hollingsworth's responses to the examining psychiatrist's questions

The ALJ found that Mr. Hollingsworth's responses during the consultative psychiatric examination were " per the examining psychiatrist evasive or vague at times during the examination, and left the impression that the claimant may have been less than entirely candid (Exhibit 4F)."  (R. 25.)  The examining psychiatrist's report, Exhibit 4F, does not refer to any "evasive or vague" responses.[4]  (R. 231-33.)  On the contrary, the examining psychiatrist noted that Mr. Hollingsworth "was cooperative and answered all questions asked."  (R. 232.)  The ALJ's decision to discount Mr. Hollingsworth's subjective complaints of pain on the basis of his purportedly "evasive or vague" responses is not supported by substantial evidence.

The Court concludes that substantial evidence does not support any of the reasons offered by the ALJ for discounting Mr. Hollingsworth's subjective complaints of pain.

### B.       The vocational expert's testimony is not supported by substantial evidence.

Because the hypothetical questions posed to the vocational expert were based on the ALJ's

---

[4]       A consultative physician, Dr. Larson, suspected–based on his review of Mr. Hollingsworth's medical record–that he "may be undereporting [sic] his [daily] activities."  (R. 254.)  Dr. Larson, however, was not the examining psychiatrist, so he did not have an opportunity to assess Mr. Hollingsworth's demeanor.

incomplete RFC determination, the Court finds that the vocational expert's testimony does not constitute substantial evidence that Mr. Hollingsworth could perform jobs that exist in substantial numbers in the national economy.  *See Jenkins*, 196 F.3d at 925.

### C.   The ALJ developed the medical record sufficiently.

Mr. Hollingsworth contends that the ALJ failed to adequately develop the medical record. An ALJ "bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."  *Scott v. Astrue*, 529 F.3d 818, 824 (8th Cir. 2008).  At the hearing, the ALJ asked Mr. Hollingsworth whether he was pursuing treatment or taking any medications for his bipolar disorder.  (R. 46-47.)   Mr. Hollingsworth responded "No, no I just been dealing with it." (R. 46.)  Mr. Hollingsworth argues that the ALJ's duty to develop the record required him to determine whether Mr. Hollingsworth's refusal to take his medication was attributable to his bipolar disorder.  *See Pate–Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) ("[F]ederal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse.") Given the absence of any evidence to suggest that Mr. Hollingsworth's noncompliance with his medication was attributable to his bipolar disorder, the Court cannot say that the ALJ erred by not eliciting testimony on this issue.

### D.   The ALJ should consider some new evidence on remand.

Mr. Hollingsworth asks the Court to order the ALJ to consider new evidence that was not made part of the administrative record.  Pl.'s Mem. at 23, ECF No. 18.  It appears to the Court that what Mr. Hollingsworth seeks is a dual-basis remand, i.e.  a remand pursuant to both sentence four and six of 42 U.S.C. § 405(g).  *See id.* at 23-24 (citing cases dealing with sentence-six remands); *see*

*generally Jackson v. Chatner*, 99 F.3d 1086 (11th Cir. 1996) (defining a dual-basis remand).

Although the Court finds that Mr. Hollingsworth meets the predicates for a sentence-six remand, it

recommends ordering the ALJ to consider the new evidence as part of the sentence-four remand in

order to avoid the "jurisdictional problem created by [a] dual-basis remand[]." *Jackson*, 99 F.3d at

1093 n.3.

### 1.    Mr. Hollingsworth meets the predicates for a sentence-six remand.

A reviewing court may remand a case for further administrative proceedings pursuant to

sentence six of 42 U.S.C. § 405(g) "upon a showing that there is new material evidence and that

there was good cause for the claimant's failure to include the evidence in the original administrative

proceedings." *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991). "To be material, new

evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time

period for which benefits were denied, and there must be a reasonable likelihood that it would have

changed the Secretary's determination." *Woolf v. Shalala*, 3 F.3d 1210, 1215 (8th Cir. 1993); *see

Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997).

Mr. Hollingsworth seeks to add four exhibits to the record: notes from Dr. Reeves related

to two visits by Mr. Hollingsworth in January and December 2010; records related to Mr.

Hollingsworth's second heart attack in July 2010; additional treatment notes from a physician's

assistant in June 2011; and notes from a chiropractor[5] These exhibits did not exist at the time of the

hearing, which "serves as cause sufficient to excuse [Mr. Hollingsworth's] failure to include them

in the administrative proceedings." *See Thomas*, 928 F.2d at 260. But Mr. Hollingsworth must still

---

[5]    Mr. Hollingworth withdrew his initial request to have the ALJ consider four other exhibits that were not made part of the administrative record. *See* Pl.'s Reply Br. at 14.

show materiality for each exhibit.  *See id.*

The additional medical reports by Dr. Reeves opine on the issue of Mr. Hollingsworth's

disability as of January 2010.  Dr. Reeves states:

> [I]t doesn't make sense to me that a person with his medical problems would not qualify for
> at least partial disability from a mental health and physical health perspective . . . . I think
> his unmanaged bipolar disorder has a lot to do with him not doing well in life overall right
> now and a lot to do with him not being able to comply with the medical [treatment] or visits
> recommended.

(Granlund Aff. Ex. E at B1-001-02).)  Although the Commissioner argues that this evidence is

immaterial because "the issue of disability is ultimately reserved for the Commissioner," the ALJ

found that Mr. Hollingsworth was not disabled in part because "[t]he record does not contain any

opinions from treating . . . physicians indicating that the claimant is disabled." (R. 24.)  Thus, the

lack of an opinion from a treating physician that Mr. Hollingsworth was disabled was clearly

relevant to the ALJ's decision to deny him benefits.  Given that one of Mr. Hollingsworth's treating

physicians believes he is at least partially disabled, the Court finds there is a "reasonable likelihood"

that this evidence may have changed the Commissioner's decision.  The evidence is therefore

material and should be considered by the ALJ on remand.[6]

The additional medical reports from the physicians at the University of Minnesota Heart

Clinic describe Mr. Hollingsworth's second heart attack in July 2010.  (Granlund Aff. Ex. G.)  These

reports are material as they relate to one of Mr. Hollingsworth's medical impairments during the

period of his alleged disability, namely his coronary artery disease.  *See Jones*, 122 F.3d at 1154.

Mr. Hollingsworth's coronary artery disease may have restricted the treatment options available to

---

[6]     The Court notes that Granlund Aff. Ex. E also contains notes from a February 2011
visit to Dr. Vlorel Guter.  *See* Granlund Aff. Ex. E at B1-007-09.  These notes are not material
and need not be considered by the ALJ on remand.

him vis-a-vis his multilevel degenerative disc disease.  In light of the fact that the ALJ attached some weight to the fact that "treatment ha[d] generally be[en] successful in controlling [Mr. Hollingsworth's disabling] symptoms," the Court finds there is a reasonable likelihood that these reports may have changed the Commissioner's decision.  The reports are material and must be considered by the ALJ on remand.

There are also additional medical reports from a physician's assistant that describe the worsening of Mr. Hollingsworth's multilevel degenerative disease as of June 2011.  (Granlund Aff. Ex. F.)  The physician's assistant states that Mr. Hollingsworth:

> has a difficult time with ambulation.  He has a difficult time with minimal activities.  At this point, I do not think he would be able to obtain a gainful employment as he has significant restrictions moving forward, lifting, carrying, pushing and pulling less than 5 pounds.  He has to change positions every 15 minutes to improve his symptoms.

(Granlund Aff., Ex. F at B2-001.)  The Commissioner argues that this evidence is immaterial because "it concerns Hollingsworth's condition after the close of the alleged disability period at issue."[7]  (Def.'s Br. at 15.)  The Court agrees.  *See Jones*, 122 F.3d at 1154 ("Additional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application for benefits.").[8]  The physician's assistant's opinion from July 2011 is not material and need not be considered by the ALJ on remand.

---

[7]    Mr. Hollingsworth's insured status for disability insurance benefits expired on December 31, 2010, seven months prior to the report. (R. 141.)

[8]    Mr. Hollingsworth cites to *Bergmann v. Apfel*, 207 F.3d 1066 (8th Cir. 2000) for the proposition that a treating physician's report may be material if it describes the deterioration of a condition that occurred over the course of the physician's treatment.  (Pl's Rep. Br. at 13-14.)  Unlike the medical reports in *Bergmann,* this report was completed by the treating physician's assistant and merely provides an opinion as to Mr. Hollingsworth's restrictions as of June 2011.

Lastly, Mr. Hollingsworth seeks to admit notes from a visit to Discover Chiropractic. (Granlund Aff., Ex. H.)  The notes are not dated nor do they contain any information relevant to Mr. Hollingsworth's alleged disability.  The notes are not material and need not be considered by the ALJ on remand.

In short, the Court concludes that the additional medical reports by Dr. Reeves and the physicians at the University of Minnesota Heart Clinic (Granlund Aff. Exs. E & G) are new, material, and good cause exists to excuse Mr. Hollingsworth's failure to include them in the administrative proceeding.  The ALJ must consider these exhibits on remand.

> **2.      The ALJ should consider the evidence as part of the sentence-four remand.**

As the Court previously observed, there are two potential bases for a remand: sentence four and sentence six of 42 U.S.C. § 405(g).  *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993) (sentences four and six are the "exclusive methods by which district courts may remand to the [Commissioner]").   "[A] sentence-four  remand is based upon a determination that the Commissioner erred in some respect in reaching the decision to deny benefits." *Jackson v. Chatner*, 99 F.3d 1086, 1095 (11th Cir. 1996).  By contrast, "[a] sentence-six remand is warranted even in the absence of any error by the Commissioner if new, material evidence becomes available to a claimant, and the claimant could not have presented that evidence at his original hearing."  *Id.*

Procedurally, the "principal feature that distinguishes a sentence-four remand from a sentence-six remand" is the "immediate entry of judgment." *Pottsmith v. Barnhart,* 306 F.3d 526, 528 (8th Cir. 2002) (quoting *Shalala,* 509 U.S. at 297).  A sentence-four remand results in a final judgment that terminates the district court's jurisdiction over the case.  *Id.*  By contrast, the district

court retains jurisdiction over a sentence-six remand and does not enter judgment until after the Commissioner returns to court to file his amended decision.  *Id.*

The Court has concluded that Mr. Hollingsworth is entitled to a remand under both sentences.  The jurisdictional issues raised by such a remand have been addressed in one of two ways.  On one hand, the Sixth Circuit has held that a district court can order the ALJ to consider additional evidence on a sentence-four remand even if the claimant has not met the predicates for a sentence-six remand.  *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 175 (6th Cir. 1994) (expressly rejecting the contention that only a sentence-six remand would permit the taking of additional evidence); *see also Huber v. Comm'r of Soc. Sec.*, 2009 WL 111738 at *11 (E.D.Mich. Jan. 15, 2009) (concluding that a dual-basis remand was warranted but remanding with instructions to hear the new evidence on the basis of sentence four only, in light of *Faucher*).  On the other hand, the Eleventh Circuit allows a district court to remand the case pursuant to both sentences four and six and then enter judgment twice: once when it remands pursuant to sentence-four and then again after the Commissioner returns to file his amended decision.  *See Jackson*, 99 F.3d at 1096-97; *see also Bradley v. Barnhart*, 463 F.Supp.2d 577, 583 (S.D.W.Va. 2006) (adopting *Jackson* and remanding pursuant to both sentences); *Sturgeon v Comm'r of Soc. Sec.,* 2009 WL 2005276 at *17 (S.D.Ohio Jul. 6, 2009) (same); *Urash v. Astrue,* 2009 WL 875064 at *4 (W.D.N.Y Mar. 24, 2009) (same); *Olivero v. Barnhart*, 2006 WL 980562 at *5 (D.Conn. Mar. 24, 2006) (same); *Joe v. Apfel*, 1998 WL 683771 at *4 (W.D.N.Y. Jul. 10, 1998) (same).

Rather than address the metaphysical question raised by *Jackson*, that is, whether a district court can enter an order that both terminates and retains its jurisdiction over a case, the Court adopts the *Faucher* approach.  While the Court recognizes that the Sixth Circuit was not presented with a

dual-basis remand (because the lower court found that the predicates for sentence-six had not been met), *Faucher* nonetheless concludes a district court may remand a case under sentence four with instructions to hear additional evidence.  The Court agrees with that conclusion.  The ALJ should consider the new evidence offered by Mr. Hollingsworth as part of the sentence-four remand proceeding.

## V.    CONCLUSION

The Court concludes that the ALJ did not provide adequate reasons for departing from the opinion of Mr. Hollingsworth's treating physician with respect to his ability to lift weight frequently, to balance, and to sit, stand and walk without interruption.  The Court further concludes that the ALJ's decision to discredit Mr. Hollingsworth's subjective complaints of back pain was not supported by substantial evidence.  On remand, the ALJ must fully consider the limitations described by Mr. Hollingsworth's treating physician in his August 2009 report.  If the ALJ disagrees with those limitations, he must provide specific, detailed reasons for doing so.  The ALJ must also consider new evidence that is material to Mr. Hollingsworth's alleged disability, namely Exhibits E and G to the Granlund Affidavit.

## VI.    RECOMMENDATION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's Motion for Summary Judgment (ECF No. 17) be **GRANTED in part** and **DENIED in part**;

2.    Defendant's Motion for Summary Judgment (ECF No. 27) be **DENIED**;

3.      The Commissioner's decision be **REVERSED** and the case be **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Report and Recommendation.


DATED:   May 24, 2012                    s/ Franklin L. Noel
                                         FRANKLIN L. NOEL
                                         United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 1, 2012**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.